UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TODD ALLEN JOHNSON,<br><br>Defendant. | CR. 14-40083-01-KES<br><br>ORDER DENYING MOTION TO SUPPRESS |

**NATURE AND PROCEDURE OF CASE**

Defendant, Todd Allen Johnson, is charged in a superseding indictment with possession with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). Docket 32. Johnson moves to suppress all physical evidence seized from his person, his residence, his vehicles, and his storage unit, which evidence was seized pursuant to two search warrants. Johnson contends the search warrants were issued based on evidence discovered as a result of an illegal search of his trash, which violated the Fourth Amendment to the United States Constitution. Docket 43. The motion was referred to a United States magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

During the evidentiary hearing,[1] the magistrate judge heard testimony from one law enforcement officer, two employees of Novak Sanitary Service, and the defendant. Seventeen exhibits were received into evidence, including numerous photographs of Johnson's residence, documents related to the issuance and execution of the search warrants, and Johnson's criminal record. The magistrate judge issued a report and recommended denial of Johnson's motion to suppress. Docket 57. Johnson and the United States object to the report and recommendation. Docket 61 (Johnson); Docket 62 (United States). For the following reasons, the report and recommendation is adopted as modified by this opinion.

### LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Accord United States v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007) ("If a party objects to the magistrate judge's report and recommendation with respect to a dispositive matter, the district court judge must conduct a *de novo* review of the disputed portion of the magistrate judge's report and recommendation."). A motion to suppress evidence is a dispositive motion that requires de novo review. Fed. R. Crim. P. 59(b)(1), (3). De novo review in the context of reviewing a magistrate judge's report and recommendation does not require a new evidentiary hearing

---

[1] The initial evidentiary hearing occurred on March 31, 2015, but at the United States' request the magistrate judge left the record open and heard additional testimony on April 10, 2015.

and only means a district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980) (internal quotations and citations omitted). In conducting de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994). The court has conducted a de novo review.

## FACTS

According to the testimony given and the exhibits introduced at the evidentiary hearing, the pertinent facts are as follows:

In mid-February 2014, Johnson moved to 1929 South Covell Avenue[2] in Sioux Falls, South Dakota. The front door of Johnson's house faces east. A driveway runs along the south side of the house to a garage located behind the house. Johnson kept his trash and recycling bins against the northeast corner of the garage roughly six to eight feet from the back door of the house. Between the west side of the house and the east side of the garage was a patio off the back door of the house containing a grill and the trash and recycling bins. The bins were partially visible from the street and were not fenced off, but were mostly hidden from view if a car was parked in the driveway in front of the garage. *See* Ex. 2 (showing red trash bin partially visible behind a car); Ex. A

---

[2] The report and recommendation gives Johnson's address as 1929 South Covell Street. The search warrant application, search warrant itself, and the search warrant return all list Johnson's address as 1929 South Covell Avenue.

(showing location of bins in the driveway); Docket 55 at 15 (describing the portion of the trash bin visible in Ex. 2).

Detective Dan Christiansen of the Minnehaha County Sheriff's Office suspected Johnson was involved in drug trafficking. On April 16, 2014, Detective Christiansen drove by Johnson's residence and noticed trash and recycling bins with Novak's color scheme and logo. Detective Christiansen called Novak and confirmed that the account at that address was registered to Johnson. Detective Christiansen also learned that Johnson's scheduled trash pick-up was that day and would occur in approximately one hour. Novak provided Detective Christiansen with the name and phone number of the route driver scheduled to pick up Johnson's trash.

Detective Christiansen contacted the driver and arranged to meet a few blocks away from Johnson's residence. There, Detective Christiansen made sure there was no other trash in the compactor in the back of the Novak truck, and then followed the truck to Johnson's address. Detective Christiansen observed as the Novak employee "walked up the driveway, grabbed the trash receptacle, pulled it down the driveway, dumped it into the back of the truck, and pulled the receptacle back up to its original location." Docket 55 at 13. As the Novak employee was walking back to the truck after returning Johnson's trash bin, Detective Christiansen testified that he observed Johnson step out the front door of the residence and wave and smile at the Novak employee. *Id.* Then, Detective Christiansen followed the Novak truck out of sight of Johnson's

residence before collecting the garbage from the truck and returning to the Law Enforcement Center to search Johnson's trash.

During his search of Johnson's trash, Detective Christiansen discovered "a document [addressed] to Todd Johnson, several corner cut baggies, four E-cigs with marijuana residue, three corner cut baggies with residue that field tested positive for methamphetamine, several marijuana roaches, baggie with unknown green residue, and a quart size vacuum sealed bag with marijuana residue." Docket 47-1 at 5 (paragraph 12 of search warrant application 14-218). In the course of his investigation, Detective Christiansen also gathered the following information:

1.  Detective Christiansen performed a post-Miranda interview with a source of information (SOI 1) identifying Johnson as a source of methamphetamine. SOI 1 described Johnson as a black male named Todd, approximately 48 years old, six feet tall, 215 pounds with a goatee and glasses. SOI 1 reported purchasing methamphetamine from Johnson several times over the previous six weeks in various quantities, most recently three days prior to the interview, and also reported seeing Johnson in possession of 12 to 15 ounces of methamphetamine at a time. SOI 1 stated that Johnson usually showed up in a maroon Cadillac and had phone number 605-830-0880.

2.  Detective Christiansen verified that the phone number provided by SOI 1 belonged to Todd Allen Johnson, born on September 16, 1964, with a recent address near Colome, South Dakota. Detective Christiansen ran a driver's license check and verified that Johnson was a black man who is five feet ten inches tall, weighs 210 pounds, and has a goatee and glasses.

3.  Detective Christiansen contacted law enforcement in the Colome area and learned that law enforcement there had recently executed a search warrant at the home of Johnson's girlfriend, Alice Blacksmith, and seized between half an ounce and an ounce of methamphetamine from her residence. According to law enforcement, Johnson had been living at that residence the previous winter.

4. Tripp County law enforcement reported that a confidential informant stated that Blacksmith referred to a black man named Todd as her partner,[3] and Todd drove a big maroon Cadillac with tinted windows. Another confidential informant told Tripp County law enforcement that when Blacksmith and another person were out of methamphetamine, they would wait for Johnson to "get back." The second confidential informant noted that the methamphetamine would be packaged in the corner of a baggie and that Johnson lived near Colome, and the confidential informant thought Johnson may cook methamphetamine at his residence. According to Tripp County law enforcement, Johnson had recently moved away from the area.

5. The reports from Tripp County law enforcement included information on two vehicles, a 2005 black Cadillac Escalade with South Dakota license plate 60CK35 and a red Cadillac DeVille with South Dakota license plate 60CE94. Both vehicles were registered to Johnson at a rural Colome address as of September 19, 2013.

6. On April 15, 2014, Detective Christiansen performed a vehicle registration check on South Dakota license plates 60CK35 and 60CE94. The vehicles matched the description provided by Tripp County law enforcement and were registered in 2014 to Johnson at 1929 South Covell Avenue.

7. Also on April 15, 2014, Detective Christiansen conducted surveillance at 1929 South Covell Avenue, where he observed Johnson's black 2005 Cadillac Escalade and red 1994 Cadillac DeVille. Detective Christiansen saw the DeVille leave and return approximately 15 minutes later, and observed a man matching Johnson's description exit the DeVille and enter the house. That night, Sioux Falls police received a tip that a red Chevy S10 pickup truck with South Dakota license plate 1BDN04 pulled over behind "a very nice Cadillac with license plates starting with 60" in the 800 block of West Ninth Street in Sioux Falls.[4] The driver of the Cadillac, a black man with glasses, got out of the Cadillac and into the truck. The tipster reported that the drivers exchanged something, and the black man returned to his vehicle. Detective Christiansen performed a vehicle registration check and learned that the vehicle was registered to someone Detective Christiansen knew to be recently involved in the possession and distribution of drugs.

---

[3] From the search warrant application, it is unclear if this reference is to a romantic relationship or a partnership to distribute methamphetamine.

[4] This area is a short distance from Johnson's residence.

- 6 -

8. Detective Christiansen performed a criminal history check on Johnson and learned that, although Johnson had no previous drug offenses, he did have an extensive criminal history. Tripp County law enforcement also conveyed information to Detective Christiansen that Johnson had recently been treated for what appeared to be a self-inflicted gunshot wound and that Johnson was not cooperative during the investigation of the incident.

*Id.* at 2-5. Based on that information, a state court judge issued a search warrant that authorized police to search Johnson's person including his urine, Johnson's residence including all outbuildings, Johnson's black 2005 Cadillac Escalade, and Johnson's red 1994 Cadillac DeVille for drugs, drug paraphernalia, evidence of drug distribution, and weapons. *Id.* at 6-7 (search warrant application); *Id.* at 9-10 (search warrant).

Law enforcement executed the search warrant on April 30, 2014. Police discovered a trace amount of methamphetamine and approximately 40 grams of marijuana in Johnson's residence. *Id.* at 15. No incriminating evidence was located in Johnson's black 2005 Cadillac Escalade. Police did not find any drugs in Johnson's red 1994 Cadillac DeVille, but they did locate a hidden compartment in the passenger seat and noticed several areas on the car that were loose and allowed access to a natural void in the design of the vehicle. *Id.* A red plastic straw that field tested positive for methamphetamine was found in the back seat of a police car following Johnson's arrest, but it is unclear whether Johnson's urine indicated use of controlled substances. *Id.*

During execution of the first search warrant, Detective Christiansen noticed two identical padlock keys bearing the word "FORTRESS" on the

keychain to Johnson's red 1994 Cadillac DeVille. *Id.* at 16. On May 1, 2014, law enforcement contacted storage units in the Sioux Falls area and discovered a storage unit registered to Johnson at Secure Self Storage, located at 111 North Garfield Avenue. *Id.* A representative of Secure Self Storage confirmed that the storage unit was registered to Johnson at 1929 South Covell Avenue with phone number 605-830-0880. *Id.* The driver's license associated with the storage unit matched Johnson, and the lock on the storage unit was the same brand as the keys found on Johnson's keychain. *Id.* A log maintained by the storage facility showed Johnson had accessed his storage unit, #B1, twelve times between April 11 and April 25, 2014. *Id.* When Johnson was stopped by police on April 30, 2014, he was on a direct route between the storage unit and his residence. *Id.*

Based on that information, Detective Christiansen obtained a search warrant for storage unit #B1 at Secure Self Storage. *Id.* at 18. The warrant authorized law enforcement to search for drugs, drug paraphernalia, evidence, of drug distribution, and weapons. *Id.* at 19. Law enforcement searched the storage unit on April 1, 2014, and discovered eight bags containing roughly one ounce[5] each of a crystal substance that field tested positive for methamphetamine, shipping documents, two operational digital scales and a baggie with methamphetamine residue, and bank cards and business cards to Johnson. *See* Ex. 10.

_____

[5] Seven bags weighed between 28.61 grams and 28.79 grams, but one bag weighed 25.1 grams. *See* Ex. 10.

Johnson was initially indicted on July 8, 2014. Following the filing of the superseding indictment, Johnson filed this motion to suppress. Docket 40.[6] Johnson argued that the trash pull by Detective Christiansen on April 16, 2014, violated his Fourth Amendment rights, and that probable cause to search Johnson's property did not exist without the evidence gathered in the trash pull. *See* Docket 40-1 at 8-12. The United States responded that Johnson had no reasonable expectation of privacy in his trash because the trash was not located in the curtilage of his residence and society recognized the ability of trash collectors to enter Johnson's property. Docket 47 at 2-7. Alternatively, the United States argued that officers relied in good faith on the search warrant. *Id.* at 7-8. The United States later submitted a supplemental memorandum arguing that Johnson consented to the removal of his trash and that the trash was abandoned property. Docket 50.

Following an evidentiary hearing, the magistrate judge issued a report and recommendation. Docket 57. Pertinent to the parties' objections, the report and recommendation determined that Johnson had an understanding with Novak whereby he would leave his trash bins by his garage and blocked by his vehicles if he did not want his trash picked up on a regularly scheduled collection day. *Id.* at 2-4, 29-30. Also, the report and recommendation concluded that Detective Christiansen's assertion that Johnson emerged from the front door and waved at the Novak employee after the employee removed

---

[6] Docket 40 is the redacted motion to suppress. Docket 42 is a sealed version of the same motion.

the trash and returned the bin was not as credible as Johnson's contention that he did not wave at the Novak employee. *Id.* at 6-8. Based on those factual findings, the report and recommendation concluded that Johnson's trash bins were on his curtilage at the time they were collected and that no license existed for the Novak employee to remove Johnson's trash. *Id.* at 26-27 (curtilage); *id.* at 30 (license). Thus, the report and recommendation concluded that the trash pull was a trespass that violated Johnson's Fourth Amendment rights. The report and recommendation also found that Johnson had a reasonable expectation of privacy in his trash. *Id.* at 30-31.

After finding that the trash pull violated Johnson's Fourth Amendment rights, the report and recommendation determined that without the information from the trash pull, probable cause still existed to search Johnson's person and red Cadillac DeVille but not his residence.[7] *Id.* at 37-40. The report and recommendation also determined that the evidence discovered at Johnson's residence would have inevitably been discovered through independent sources, so suppression was not required. *Id.* at 40-42. Alternatively, the report and recommendation found that the *Leon* good faith exception applied. *Id.* at 42-45. Thus, the report and recommendation recommended denial of the motion to suppress.

## DISCUSSION

---

[7] The report and recommendation did not determine whether probable cause existed to search Johnson's black Cadillac Escalade. Because no evidence was found in that vehicle, there would be no evidence to suppress. Docket 57 at 40 n.11. Thus, the issue is moot.

## I.     United States' Objections

### A.     Objection 1

Objection 1 by the United States disputes the magistrate judge's finding that testimony from Novak employees confirmed Johnson's testimony regarding Johnson's unwritten understanding with Novak. Docket 62 at 1-2. A Sioux Falls ordinance prohibits placing trash for pickup at the curb. Ex. 1 (ordinance); Docket 55 at 7. Novak requires customers to have trash out for pickup by 6 a.m. on their collection day and requires the trash be visible from the street. Docket 55 at 7. Novak instructs its employees that if a customer's trash bin is visible from the street, the driver should collect the trash from wherever it is located as long as the driver is able to access the containers. *Id.* at 59-61. Customers may also contact Novak with special requests for trash pickup, which requests are noted in the Novak driver's route sheet. *Id.* at 60. If a driver is unable to pick up a customer's trash on the scheduled day, the driver notifies dispatch of the missed pickup and the reason. *Id.*

A Novak employee testified that Johnson's route sheet did not contain any notations regarding a request by Johnson to only have his trash picked up from a designated location on his property. *Id.* at 60-62. Novak's records did indicate that on three occasions Novak's driver did not pick up Johnson's trash because it was blocked in by a vehicle and not accessible. *Id.* at 60-61. Although Johnson testified that he believed Novak did not pick up his trash in accordance with an agreement, Novak's records do not reflect any mutual understanding or agreement. Rather, the records demonstrate that Novak did

not pick up Johnson's trash when the trash was inaccessible, but Novak did not make that determination based on a tacit signal by Johnson that he did not want his trash picked up. Objection 1 is sustained to the extent the report and recommendation found that Novak's records confirmed an agreement.

### B.    Objection 2

Objection 2 by the United States objects to the report and recommendation's conclusion that Johnson's testimony that he never used the front door of his residence was circumstantially supported by the fact that Detective Christiansen observed Johnson use the back door of the residence on one occasion. Docket 62 at 2-3. Although the circumstantial support is weak, the fact that Johnson used the back door of his residence on the one occasion observed by Detective Christiansen does support Johnson's position that he did not use the front door of his residence. Objection 2 is overruled.

### C.    Objection 3

Objection 3 by the United States objects to the report and recommendation's conclusion that the fact that Detective Christiansen did not mention the wave in his report or search warrant affidavit buttresses Johnson's testimony that the wave did not happen. Docket 62 at 3-4. The fact that Detective Christiansen omitted the alleged wave from his report or search warrant application does not strengthen his version of events. That omission does not directly reflect on the credibility of Johnson, but by failing to strengthen Detective Christiansen's story, it indirectly makes Johnson's position more likely. Objection 3 is overruled.

### D.      Objection 4

Similarly, objection 4 by the United States objects to the report and recommendation's conclusion that the absence of the wave from the search warrant affidavit was "not an insignificant fact." Docket 62 at 4. The United States believes that the absence of the wave from those documents does not provide a basis for the report and recommendation's rejection of Detective Christiansen's statement that Johnson emerged and waved to the Novak employee.

The report and recommendation's description of whether the wave happened as a significant fact that would tend to be in a search warrant application is less conclusive than the United States contends. The magistrate judge's conclusion fairly notes that when a disputed fact is omitted from a search warrant application, the existence of that fact is open to greater scrutiny. Also, Johnson's presence at the residence would be a fact linking Johnson to the property in question and presumably would be included in a search warrant application. Unlike the United States' characterization, the magistrate judge did not require Detective Christiansen to complete a perfect report. Objection 4 is overruled.

### E.      Objection 5

Objection 5 by the United States objects to the overall determination that Johnson's version of events was more credible than Detective Christiansen's version. Docket 62 at 5. The United States contends that the report and

recommendation erred in crediting Johnson's claim that he never used his front door. On direct examination, Johnson stated:

> Q:   Did you ever use the front door of the residence?
>
> A:   No, sir.
>
> Q:   Why not?
>
> A:   Because there were brand new wooden floors in there. I just used the back, because it was easier to change into my house shoes, so I wouldn't scuff up the floor. I couldn't put a rug in front of the front door, because when I opened it, then the rug would move and I'd be tracking up the floor. So it was easy for me to use the back.
>
> Q:   So you never used the front door of that residence?
>
> A:   No, sir.

Docket 55 at 44. Based on the photos, the back door of Johnson's residence is close to where Johnson would park his car by the garage, whereas the front door is less convenient.

After reviewing the evidence and testimony, the court finds Johnson's statements that he did not enter or exit his house via the front door credible. But that conclusion does not mean Johnson never opened his front door, or that Johnson could not possibly have opened the door to wave at the Novak employee. The concerns cited by Johnson—convenient access to the garage and a desire not to scuff his floor—would not apply if Johnson were already in the house and wearing his house shoes. Johnson's testimony that he did not have a rug in front of the front door because the rug would bunch up when he opened the door indicates that Johnson had in fact opened the front door at times. Thus, the court does not believe that Johnson's assertion that the back

- 14 -

door was his exclusive means of ingress and egress is incompatible with Detective Christiansen's recollection that on April 16, 2014, Johnson briefly opened the front door to wave at the Novak employee. Thus, objection 5 is sustained.

### F.   Objection 6

The United States objects to the report and recommendation's determination that Johnson's trash bins were located in the curtilage of his residence. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013). The Fourth Amendment protects a person's home and the area immediately around it to which "the intimate activity associated with the sanctity of a man's home and privacies of life" extend. *Oliver v. United States*, 466 U.S. 170, 180 (1984). Property outside the curtilage does not enjoy Fourth Amendment protection, and society does not recognize a reasonable privacy interest in open fields. *Id.* at 179-80. Accordingly, to show a physical intrusion on a protected area in violation of the Fourth Amendment, Johnson must show that the bins were located within the curtilage of his home.[8]

The Supreme Court has explained:

Curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure

---

[8] It is unclear whether a curtilage determination is a factual or legal question. *See Christensen v. Quinn*, 45 F. Supp. 3d 1043, 1063-64 (D.S.D. 2014) (discussing Eighth Circuit cases). Because this court has conducted a de novo review of the factual and legal questions at issue, that distinction does not change the outcome of this motion.

surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987) (citing *California v. Ciraolo*, 476 U.S. 207, 221 (1986) (Powell, J., dissenting)). "[T]hese factors are not applied mechanically or in isolation." *United States v. Bausby*, 720 F.3d 652, 656 (8th Cir. 2013) (quoting *United States v. Gerard*, 362 F.3d 484, 488 (8th Cir. 2004)). Generally the concept of curtilage is " 'easily understood from our daily experience.' " *Jardines*, 133 S. Ct. at 1415 (quoting *Oliver*, 466 U.S. at 182 n.12). "The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.' " *Id.* (quoting *Oliver*, 466 U.S. at 182 n.12).

Here, Johnson's trash bins were six to eight feet from the back door of Johnson's home. From the bins, a person could see through the full-length window on Johnson's back door directly into Johnson's kitchen. *See* Ex. F. The back patio contained a grill, showing that Johnson used the patio as part of his private domestic life. *See* Ex. D. The bins are visible from the street but they are not prominent and the back patio is almost entirely hidden from the street by the house itself. *See id.* (showing that the street is not visible from the back patio). Although there is no fence on Johnson's property and it does not appear that Johnson took any other steps to hide his patio or trash bins, those facts are outweighed by the other factors and the overall private nature of Johnson's back patio. The location of the trash bins is consistent with and related to "the

intimate activity associated with the sanctity of [Johnson's] home and privacies of life . . . ." *See Oliver*, 466 U.S. at 180.

In its original brief opposing the motion to suppress, the United States only argued that the bins were not located in the curtilage of Johnson's home because "[t]he officer's report does not indicate that there was fencing or any other enclosure separating the garbage from the street." Docket 47 at 5. Although there was no fence around the bins, that fact alone does not defeat the other aspects of the curtilage determination that weigh in favor of finding that Johnson's back patio is part of his curtilage. Such reasoning would eliminate the concept of curtilage in all yards without a fence. The United States provides no new argument in its objection to the report and recommendation in support of the position that the bins were located outside the curtilage of Johnson's home. *See* Docket 62 at 5-6. The remainder of the United States' objection is directed to the question of whether law enforcement could permissibly intrude on Johnson's back patio, which question relates to the issue of a license to intrude on a protected space. Thus, the United States' objection 6 regarding the report and recommendation's curtilage determination is overruled.

### G.    Objection 7

In its seventh objection, the United States objects to the report and recommendation's conclusion that the city ordinance cannot justify the reasonableness of police intrusions. Docket 62 at 6-7. The magistrate judge correctly stated that the Fourth Amendment's application is not determined by

varying state laws. Docket 57 at 28 (citing *California v. Greenwood*, 486 U.S. 35, 43 (1988)). Under *Greenwood*, the proper inquiry is not what local law allows but instead what society recognizes as reasonable. *Greenwood*, 486 U.S. at 43 ("We have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs. We have emphasized instead that the Fourth Amendment analysis must turn on such factors as our societal understanding that certain areas deserve the most scrupulous protection from government invasion.").

The Sioux Falls ordinance is evidence that a limited intrusion onto Johnson's curtilage to collect trash properly set out for collection is reasonable. *See, e.g., United States v. Redmon*, 138 F.3d 1109, 1113 (7th Cir. 1998) (finding that an ordinance moved the defendant's curb for practical collection purposes). But the ordinance does not end the inquiry, particularly in cases where a question exists about whether the trash was actually put out in compliance with the ordinance. *See id.* at 1113-14 (emphasizing that the trash was left out for collection). Even without the ordinance, a commercial garbage hauler would be licensed to intrude to the extent agreed to by the parties, but would not be licensed to trespass beyond the scope of the collection agreement. The report and recommendation correctly focuses not on the ordinance but on what privacy expectations society accepts as reasonable. Objection 7 is overruled.

### H.    Objection 8

Objection 8 by the United States objects to the report and recommendation's conclusion that there was an agreement between Johnson and Novak as unsupported by the record. Docket 62 at 7-8. For the reasons stated with respect to objection 1, the evidence does not show an agreement between Johnson and Novak. The fact that Johnson interpreted Novak's failure to pick up his trash on certain days as an agreement does not establish that there was actually an understanding or agreement between Johnson and Novak. The evidence from Novak shows only that Novak picked up Johnson's trash when it was accessible and did not pick it up when it was inaccessible. Thus, objection 8 is sustained to the extent the report and recommendation concluded there was an agreement between Johnson and Novak that Novak would only pick up Johnson's trash from one specific location on Johnson's property.

### I.    Objection 9

Objection 9 by the United States objects to the report and recommendation's conclusion that no license existed to enter Johnson's property and that the trash pull was therefore a violation of the Fourth Amendment. Docket 62 at 8-9. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A Fourth Amendment violation occurs when an officer commits an unlicensed physical intrusion into a protected area **or** violates a person's

reasonable expectation of privacy. *Jardines*, 133 S. Ct. at 1417 ("The *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*,' the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas." (italics in original) (quoting *United States v. Jones*, 132 S. Ct. 945, 951-52 (2012)).[9]

Both the report and recommendation and this court found that Johnson's trash bins were located in the curtilage of his residence. The fact that the bins were on Johnson's curtilage is not dispositive of the trespass issue because law enforcement[10] may enter the curtilage if a license exists to do so. "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Jardines*, 133 S. Ct. at 1416 (quoting *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011)); *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984) ("[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors— such as driveways, walkways, or similar passageways."). But in doing so, the officer may not exceed the scope of the license, which is not only limited to a

---

[9] The report and recommendation thoroughly examined the leading cases on the application of the Fourth Amendment to trash and the recent decisions of the Supreme Court on the Fourth Amendment generally. Neither party disputes the report and recommendation's formulation of the trespass test and reasonable expectation of privacy test.

[10] The report and recommendation treated the Novak employee as an agent of law enforcement. Neither party objected to that conclusion.

particular place but also a particular purpose. *Jardines*, 133 S. Ct. at 1416. The government bears the burden of showing that an intrusion on a protected space was justified. *See United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005).

The United States argues that because Johnson waved at the Novak employee he consented to the Novak employee's intrusion on his property. Detective Christiansen testified that he saw Johnson emerge briefly from his home and wave, although he did not include that fact in his search warrant application. Johnson's testimony is less specific—he did not say that he positively remembered that he did not wave on the occasion in question, he only testified that it would not be possible because he never used the front door. As discussed above, the main reasons Johnson did not use the front door as his access to the house would not apply if he were already inside. Thus, Johnson's statement does not inherently contradict Detective Christiansen's testimony. The court sees no other reason to doubt Detective Christiansen's credibility. After review, this court believes it is more likely than not that on this occasion Johnson did briefly use his front door to wave at the Novak employee.

Even crediting Detective Christiansen's assertion that Johnson waved at the Novak employee, that fact does not necessarily establish a license or consent. First, Detective Christiansen's testimony reveals that the wave happened *after* the Novak employee collected Johnson's trash. Second, the meaning behind the wave is unclear. Johnson could have intended to grant a

license to enter his property, but he could also have simply intended to say hello, or to wave off the Novak employee, or to apologize for the misunderstanding and the Novak employee's extra effort to collect trash that Johnson had not intended to put out for collection. Thus, the fact that Johnson waved to the Novak employee does not establish that Johnson consented to the removal of his trash or granted a license to the Novak employee to enter his curtilage.

Having determined that there was no agreement between Johnson and Novak regarding the placement of Johnson's trash bins as a signal for permission to collect the trash, the court turns to the question of whether Johnson in fact turned his trash over to Novak for collection. If Johnson did so, the Novak employee would be licensed to enter Johnson's curtilage to collect the trash.

The United States points to the ordinance requiring that trash cans be visible and accessible. The report and recommendation acknowledged that the cans were visible from the street, but only barely. Exhibits 2 and A strengthen that conclusion. Furthermore, Johnson testified that when he wanted his trash picked up he would move it from its location by the garage and "leave it out in the front." Docket 55 at 47. Such a relocation of the bins would be consistent with the ordinance and would be reasonable given the layout of Johnson's property.

The United States argues that Johnson's bins were in fact accessible on the day of the trash pull because the Novak employee was able to retrieve

them. That assertion is contradicted by the fact that on three occasions Novak employees declined to collect Johnson's trash because they believed it was inaccessible. Johnson testified that on those occasions the trash was in its normal location by his garage. The fact that one Novak employee—who was collecting the trash at law enforcement's direction—was able to physically reach the bins does not establish that they were reasonably accessible or put out for collection.

The United States introduced testimony of another Novak employee who, subsequent to the trash pull, testified that Johnson's trash was collected from the location next to the garage. That testimony is limited to one occasion after the search took place. Docket 55 at 63-66. This testimony does not establish that Johnson's trash was put out for collection on the day of the trash pull.

Johnson contracted with a commercial garbage hauler, Novak, to remove his trash when it was put out for collection on the proper day. Novak, and law enforcement, had a license to enter Johnson's curtilage for that purpose. But they were not authorized to exceed that purpose or to collect trash that was not put out for collection. Novak would not be entitled to enter Johnson's house "and take the contents of the wastebasket in the bedroom[]" simply because the contents had been deposited in a trash bin. *See Redmon,* 138 F.3d at 1113. Similarly, Novak did not have a license to enter Johnson's property and collect trash from any place it was located. Because Johnson had not put his trash out for collection, neither Novak nor law enforcement was entitled to enter his property to take it. Objection 9 is overruled.

- 23 -

**J.     Objection 10**

In Objection 10, the United States objects to the report and

recommendation's statement that there are heightened privacy concerns in

trash due to the amount and variety of personal information in trash. Docket

62 at 9. The report and recommendation stated that:

> [T]rash, like digital data on a cell phone, consists of a collection all
> in one place of many disparate kinds of information—"an address,
> a note, a prescription, a bank statement, a video"—and that
> collection of data reveals much more about a person in
> combination "than any isolated record." Thus, although the
> Supreme Court dismisses any subjective expectation of privacy in
> trash as "unreasonable," there are heightened privacy concerns in
> trash and courts should be cautious in reaching the conclusion
> that a defendant has definitively relinquished possession of such
> privacy-laden caches.

Docket 57 at 30 (quoting *Riley v. California*, 134 S. Ct. 2473, 2489 (2014)).

Trash is unlike data on cell phones because the sheer volume of

information on a cell phone is greater than the amount of information in trash.

*See Riley*, 134 S. Ct. at 2489 (noting the "immense storage capacity" of some

phones). More importantly, the user of a cell phone presumably intends to

continue using the information on the cell phone and has not turned that

information over to a third party for disposal nor made such information

available to the general public. *See Greenwood*, 486 U.S. at 39-41 (discussing

why a person has no reasonable expectation of privacy in trash). Thus, the fact

that trash may contain some personal information does not imply that trash,

like digital information on a smart phone, is entitled to heightened privacy

protection.

- 24 -

When evaluating whether a person has a reasonable expectation of privacy in trash, courts look to whether the trash was exposed to the public. "The constitutionality of a trash pull depends upon 'whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable.' " *See United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012) (quoting *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992)). "[T]here is no reasonable expectation of privacy in the contents of a garbage can that is readily accessible to the public, even when the receptacle is located within the curtilage of a residence." *Anderson v. United States*, 762 F.3d 787, 793-94 (8th Cir. 2014) (citing *Comeaux*, 955 F.2d at 589). The report and recommendation correctly stated that test and correctly determined that because Johnson had not put his trash out for collection, he still had a reasonable expectation of privacy in the contents of his trash bin. *See* Docket 57 at 30-31. Objection 10 is sustained to the extent that the report and recommendation found a heightened privacy interest in all trash, but the remainder of objection 10 is overruled because the trash had not been put out for collection.

### K.    Objection 11

In objection 11, the United States objects to the report and recommendation's failure to address whether Johnson abandoned his trash. Docket 62 at 10-11. "A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. Tugwell*, 125 F.3d

600, 602 (8th Cir. 1997); *see also United States v. Sanders*, 130 F.3d 1316, 1317 (8th Cir. 1997) ("It is therefore firmly established that a warrantless search of abandoned property is not unreasonable and does not violate the Constitution."). "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." *Tugwell*, 125 F.3d at 602 (internal quotations omitted). The particular location of the abandoned property is not dispositive. *See Katz v. United States*, 389 U.S. 347, 351-52 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.") (citations omitted). The government bears the burden of proving an abandonment of property occurred. *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003). The determination of whether an abandonment has taken place is based on all of the "objective facts available to the investigating officers." *Tugwell*, 125 F.3d at 602.

The United States argues that Johnson never testified that he intended to use his trash again and that he intended to have it picked up at a later date, indicating he abandoned it. But Johnson is not required to affirmatively demonstrate intent to continue using an item to avoid a finding of abandonment. The United States' position that trash becomes abandoned as soon as it is placed in a trash bin would justify a search not only of trash bins

located next to a garage but of trash bins located in a kitchen, bedroom, or bathroom. The act of placing trash in a receptacle does not automatically confer on law enforcement a right to search that trash because it is abandoned; rather, the act of putting the trash out for collection signals the relinquishment of a reasonable expectation of privacy in that trash. *See Redmon*, 138 F.3d at 1114 (discussing abandonment and exposure to the public).

The United States argues that the act of placing the trash for collection in its normal location supports a finding of abandonment. As discussed above, Johnson did not place the trash out for collection. Thus, even though Johnson may have put the trash out for collection in the future, he had not yet abandoned it. Objection 11 is overruled.

## II.    Johnson's Objections

### A.    Objection 1

Johnson's first objection argues that the report and recommendation improperly concluded that Johnson was living with Blacksmith in Colome prior to the search of Blacksmith's residence. Docket 61 at 3. The search warrant affidavit indicates that law enforcement searched Blacksmith's residence in mid-April 2014. Docket 47-1 at 3. Johnson moved to his residence in Sioux Falls in mid-February 2014. Docket 55 at 48. The objection is sustained to clarify the timing of Johnson's departure relative to the search at Blacksmith's residence.

### B.    Objection 2

Johnson's second objection contends that paragraphs 4 and 5 of the search warrant application do not support the report and recommendation's conclusion that Johnson transported methamphetamine in a maroon Cadillac. Docket 61 at 3. Paragraph 4 of the search warrant application states that a confidential informant reported that Johnson drove a big maroon Cadillac with tinted windows. Docket 47-1 at 3. Paragraph 5 of the search warrant application contains information from another confidential informant implying that Johnson transported methamphetamine to Blacksmith when she ran out. *Id.* Reading paragraphs 4 and 5 together, the magistrate judge's description is a fair characterization of the evidence in the search warrant application. Johnson also objects that the second confidential informant did not provide any reliable facts supporting the statement that Johnson cooked methamphetamine at his residence. Because that tip was not corroborated, the magistrate judge concluded that probable cause to search Johnson's residence did not exist until after other evidence of drug activity was discovered. Finally, Johnson also objects to the finding that a South Dakota license plate bearing number 60 is rare. There was evidence admitted during the hearing that Colome is in Tripp County and that Johnson's license plates starting with 60 were registered to him in Tripp County. It is not improper for the court to take judicial notice of the small number of people who reside in Tripp County, who would then be issued a license plate bearing the number 60. Objection 2 is overruled.

### C.     Objection 3

Johnson's third objection argues that a "very nice Cadillac" could describe many cars in South Dakota, and the description of a "black man with glasses" could describe thousands of Sioux Falls residents. Docket 61 at 4. The report and recommendation accurately summarized the information contained in the search warrant application regarding the vehicle involved in the suspected drug transaction and the defendant. *Compare* Docket 47-1 at 4 (search warrant application) *with* Docket 57 at 36 (report and recommendation). Objection 3 is overruled.

### D.     Objection 4

Johnson's fourth objection contends that paragraph 14 of the search warrant affidavit is speculative. The report and recommendation accurately summarizes the information contained in the search warrant application regarding Johnson's suspected self-inflicted gunshot wound. *Compare* Docket 47-1 at 5 (search warrant application) *with* Docket 57 at 36 (report and recommendation). Objection 4 is overruled.

### E.     Objection 5

Johnson's fifth objection concerns information from the search warrant application that Johnson believes is boilerplate language. Docket 61 at 5. Beyond making a boilerplate objection himself, Johnson does not provide any specific reason why the magistrate judge should not have relied on the sworn written statement from Detective Christiansen in his area of expertise. Objection 5 is overruled.

**F.     Objection 6**

Johnson objects to the magistrate judge's inclusion of evidence uncovered in the trash pull at issue in this suppression motion. Docket 61 at 5. The report and recommendation included the information from the trash pull in its description of what information was included in the search warrant affidavit. Docket 57 at 37. But the report and recommendation excised the evidence gathered from the trash pull when reconstructing the affidavit to determine whether probable cause existed without the trash pull evidence. *Id.* at 42 ("The court concludes that the search warrant for Mr. Johnson's person and his red Cadillac DeVille were supported by probable cause, even excluding the evidence which derived from the trash pull."). Objection 6 is overruled.

**G.     Objection 7**

Johnson objects to the report and recommendation's conclusion that the first search warrant was supported by probable cause after omitting the information from the trash pull.[11] Johnson's seventh objection states:

> [A]fter omitting the illegal trash-pull evidence, the Affidavit in Support of Search Warrant[] was based almost entirely upon the testimony of anonymous callers and unproven confidential informants who were most likely given something in exchange for supplying supposed information to the detectives. The assertions that there would be evidence of illegal drugs at Mr. Johnson's residence and/or in his vehicles was nothing more than a guess and the same cannot substitute for the lack of evidentiary nexus in this case, prior to the search and any criminal activity.

---

[11] Johnson does not challenge the magistrate judge's determination that the search warrant for the storage unit was supported by probable cause except to argue that the first search warrant was invalid. Johnson also does not object to the finding that the evidence discovered in Johnson's residence would inevitably have been discovered through independent means.

Docket 61 at 7. " '[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). Probable cause is assessed " 'from the viewpoint of a reasonably prudent police officer acting in the circumstance of the particular case.' " *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Reinholz*, 245 F.3d 765, 766 (8th Cir. 2001)). A probable cause determination is based on a "common-sense reading of the entire affidavit." *Id.*

" 'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.' " *Solomon*, 432 F.3d at 827 (internal quotations omitted) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). Thus, this court's review will be limited to Detective Christiansen's affidavit. "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted).

"If the affidavit relies on information from an informant, 'the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search.' " *Rodriguez*, 711 F.3d at 936

(quoting *Solomon*, 432 F.3d at 827). The Eighth Circuit recognizes three types of informants: reliable known informants, unreliable known informants, and anonymous informants. *United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008). Information from both anonymous informants and unreliable known informants requires some sort of independent verification or corroboration. *Id.* " 'Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence.' " *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). " 'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.' " *Id.* (quoting *Williams*, 10 F.3d at 593). Verification of small or innocent details can provide sufficient corroboration to establish probable cause. *Rodriguez*, 711 F.3d at 936.

Detective Christiansen had personal contact with Source of Information 1, which contact strengthened Detective Christiansen's decision to rely on that information. *See United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996) ("[P]ersonal contact with an informant can strengthen an officer's decision to rely on the information provided . . . ."). Source of Information 1 also provided information against his or her penal interest, increasing the reliability of that information. *See id.* ("[S]tatements against the penal interest of an informant naturally carry considerable weight.").

- 32 -

The descriptions provided of Johnson and his vehicle are all mutually corroborative. *See Keys*, 721 F.3d at 518 ("[T]he receipt of consistent information from two separate sources is a form of corroboration."). Detective Christiansen was able to verify the phone number, license plate information, and description of Johnson provided by the informants. Significantly, Detective Christiansen received a tip that a vehicle matching Johnson's vehicle was involved in a suspected drug transaction with another vehicle, and Detective Christiansen was able to confirm that the second vehicle was registered to an individual known to participate in the drug trade. Based on the evidence in Detective Christiansen's affidavit other than the information obtained from the trash pull, this court agrees with the report and recommendation's determination that probable cause existed to issue a search warrant for Johnson's person and his red 1994 Cadillac DeVille. Objection 7 is overruled.

## H.    Objection 8

Finally, Johnson objects to the report and recommendation's alternative conclusion that the evidence against Johnson should not be suppressed because law enforcement acted in good faith in executing the search warrant. Johnson contends that:

> [T]here were a number of omissions by Detective Christensen [sic] from the search warrant. Had Detective Christensen [sic] indicated that the trash barrels were close, in front of the garage doors, and blocked by a vehicle and that Johnson and Novak Sanitation had a [sic] agreement that his garbage would not be picked up when placed there, the issuing judge would have been alerted to the problems with the trash-pull. The judge would have then questioned Detective Christensen [sic] further on the legality of the same and based upon those issues, would then have had further questions and concerns about the remainder of the warrant. It is

> readily apparent that Detective Christensen [sic] intentionally omitted various facts from the Application and then when someone challenged him with respect to the same, he testified to other "facts" that he didn't put in the Application. It is clear that the "new facts" (i.e. Johnson waving at the garbage man) were not supported by any credible evidence and were self-serving fabrications. The Magistrate indicates that the story of Johnson waving to the garbage man "cuts both ways[,"] but unfortunately it doesn't. Since it never happened, Detective Christensen [sic] would not have originally put it in the Application. The Magistrate went on to indicate that she didn't think it was an intentional misstatement, but rather that Detective Christensen [sic] confused this case with another. Again, this information would never have been in the Application.

Docket 61 at 9-10.

If law enforcement obtains a facially valid search warrant and acts within the scope of that warrant, the Fourth Amendment does not require suppression of evidence discovered pursuant to that warrant even if it is later determined that the warrant was invalid. *United States v. Leon*, 468 U.S. 897, 921-24 (1984). The Eighth Circuit has recognized four circumstances that preclude a finding of good faith reliance on a warrant: (1) when law enforcement intentionally or recklessly includes false information in the warrant application and thereby misleads the issuing judge; (2) when the issuing judge wholly abandons the neutral and detached role required of a judicial officer; (3) when the affidavit is so lacking in probable cause that it would be entirely unreasonable for an officer to rely on it; and (4) when the warrant is so facially deficient that no officer could reasonably presume it to be valid. *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (citing *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

- 34 -

Johnson's allegation that Detective Christiansen misled the issuing judge by intentionally or recklessly omitting information about an agreement between Johnson and Novak overlooks the fact that Detective Christiansen likely did not know about any alleged agreement at the time he submitted his affidavit. Similarly, even if the court assumes that Detective Christiansen's testimony regarding Johnson's wave to the Novak employee was false, that information was not contained in the affidavit in support of the search warrant and could not have misled the issuing judge. After reviewing Detective Christiansen's affidavit and the evidence in this case, the court does not believe that Detective Christiansen intentionally or recklessly misled the issuing judge. Johnson's eighth objection is overruled.

## CONCLUSION

Law enforcement trespassed on Johnson's property without a warrant and thereby violated Johnson's Fourth Amendment rights. But probable cause existed without the evidence from the trash pull to search Johnson's red 1994 Cadillac DeVille and his person. Evidence discovered in that search was sufficient to support a search warrant for Johnson's storage unit, and the evidence discovered in Johnson's house would have inevitably been discovered through investigation independent of the Fourth Amendment violation. Even if probable cause did not exist for the warrants, law enforcement relied on those warrants in good faith. Thus, the report and recommendation is adopted as modified by this opinion. Accordingly, it is

ORDERED that the motion to suppress (Docket 40) by defendant Todd

Allen Johnson is denied.

Dated June 16, 2015.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE